55 P.3d 74

**In re the Marriage of Angela M. DONLANN, Petitioner–Appellant,**

v.

**Richard W. MACGURN, Respondent–Appellee.**

No. 1 CA–CV 01–0095.

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 12, 2002.
Review Denied Feb. 11, 2003.

Mohr, Hackett, Pederson, Blakley & Randolph, P.C. by Thomas M. Quigley, Phoenix, Attorneys for Petitioner–Appellant.

Santin, Poli & Ball, P.L.C. by Jeffrey, Messing, K. Scott Reynolds, Phoenix, Attorneys for Respondent–Appellee.

## OPINION

LANKFORD, Judge.

¶ 1 Petitioner Angela M. Donlann ("Wife") appeals from the superior court's order in a marital dissolution action declaring invalid her marriage to Respondent Richard W. Macgurn ("Husband"). The principal issue we decide is whether the marriage, performed in Mexico, is valid. In doing so, we review the superior court's conflicts of law analysis. We also consider Husband's alleged new evidence and his allegation that Wife perjured herself.

¶ 2 The material facts are as follows. Husband and Wife participated in a marriage ceremony in 1990 during a vacation in Puerto Vallarta, in the State of Jalisco, Mexico. They obtained the necessary blood tests and marriage certificate in Mexico. The marriage certificate was signed by Dr. Antonio Robles, a Civil Registry Official. It is undisputed that Dr. Robles is a man and that he was a duly authorized member of the Civil Registry Office. It is also undisputed both that the person who performed the marriage ceremony was a woman and that at the time of the ceremony, there were no female Civil Registry Officials.

¶ 3 The parties returned to Arizona and resided together here. In 1997, Wife petitioned for dissolution. Husband moved to dismiss the petition, alleging that the marriage was invalid under Jalisco law because the wedding was not performed by a Civil Registry Official.[1] Wife moved for partial summary judgment, arguing both that the marriage was valid under Jalisco law and that Husband was estopped from denying its validity.

¶ 4 Superior Court Judge Mark Armstrong denied both motions because Husband had failed to meet his burden of proving the marriage invalid and because genuine issues of material fact existed regarding the validity of the marriage. Judge Armstrong also rejected Wife's estoppel claim.

¶ 5 Husband filed another motion for summary judgment, this time including the affidavits of two experts stating that the marriage was invalid under Jalisco law. Wife responded that, regardless of technical defects in the ceremony, Jalisco law treated the parties as married because they had acted in good faith.

¶ 6 Judge Louis A. Araneta, newly assigned to the case, denied Husband's motion. Judge Araneta agreed that the ceremony was flawed: He found that at the time of the marriage, no females were Civil Registry officials. However, he also decided that

"Arizona also recognizes the solemnization and validity of a marriage as long as the only defect is in the person performing the ceremony and as long as one spouse believes in good faith that the person is authorized to perform the ceremony." Judge Araneta noted that Jalisco law was not inconsistent with Arizona law because it similarly protected a party's marital rights if the party acted in good faith. Finally, Judge Araneta concluded that the parties' good faith belief in the authority of the woman who performed the ceremony was a question for the trier of fact. At the trial, the parties stipulated that the woman performing the ceremony purported to have authority to do so and that Wife reasonably believed in good faith that the woman had such authority. The court, applying Arizona law, determined that the marriage was valid.

¶ 7 Husband petitioned for special action relief, which this Court denied. Husband then filed a motion for reconsideration in the superior court based on Wife's alleged perjury and on newly discovered evidence.

¶ 8 In his motion, Husband asserted that after extensive discovery attempts, he had recently discovered that Wife had filed her 1991 and 1992 tax returns as a "single" person. He also claimed to have recently obtained an affidavit from an attorney stating that in 1995, Wife had told him that she did not know whether the marriage was valid. Husband argued that these facts cast doubt upon Wife's good faith belief in the validity of the marriage. Wife argued that Husband's motion was untimely and that the relevant inquiry was whether the parties held a good faith belief *at the time of the ceremony* that the person performing the ceremony was authorized to do so.

¶ 9 Judge J. Richard Gama had been assigned to the case and decided Husband's motion. Judge Gama found that Husband's motion for reconsideration "was an appropriate procedural vehicle to get before the Court a reconsideration of the issue on the validity of the marriage."[2] Judge Gama de-

---

1. Because Husband's motion to dismiss referenced materials outside the pleadings, the superior court properly treated it as a motion for summary judgment. *See* Ariz. R. Civ. P. 12(b).

2. The court cited Ariz. R. Civ. P. 59, which indicates that it treated the motion for reconsideration as a motion for a new trial.

cided that the marriage was invalid under the laws of Jalisco and was not recognized as a valid marriage in Arizona. Although Judge Gama found Arizona's good faith statute [3] inapplicable, he also found that Husband's new evidence negated Wife's good faith belief in validity of the marriage ceremony.

¶ 10 Based on these conclusions, Judge Gama granted summary judgment in favor of Husband and dismissed the dissolution petition. Wife filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (1994).

■ ¶ 11 The threshold question is whether the validity of the marriage is determined by the law of Jalisco or of Arizona. We review choice of law determinations *de novo*. *See Garcia v. Gen. Motors Corp.*, 195 Ariz. 510, 516, ¶ 19, 990 P.2d 1069, 1075 (App.1999) ("Choice-of-law issues are questions of law, which we review *de novo*.").

■ ¶ 12 Judge Gama correctly applied Jalisco law to initially determine the validity of the marriage. Unless strong public policy exceptions require otherwise, the validity of the marriage is generally determined by the law of the place of marriage. *See Vandever v. Indus. Comm'n of Ariz.*, 148 Ariz. 373, 377, 714 P.2d 866, 870 (App.1985); Restatement (Second) of Conflict of Laws ("Restatement") § 283(2) (1971); A.R.S. § 25–112 (2000) (de-

claring certain marriages void regardless of validity in the state where contracted).

¶ 13 Judge Gama also correctly decided that the marriage did not satisfy the formal requirements of Jalisco law. The Civil Registry Code of the State of Jalisco ("Jalisco Code") lists several acts that the Civil Registry Official performs. The official is to obtain documents, declarations and signatures from the parties and witnesses and declare the parties married upon completion of the ceremony. *See* Jalisco Code, tit. 4, ch. 7, arts. 86, 87, 89, 91.[4]

¶ 14 The flaw in this case is that the person who signed the marriage certificate did not perform the ceremony.[5] The marriage therefore did not comply with Jalisco Code Articles 87, 89, and 91. Because the marriage violated those provisions, the marriage is invalid under Jalisco law: Article 291 of the Jalisco Code nullifies a marriage that has been "celebrated in violation of that which has been set forth under Articles 86, 87, 89, 91."

■ ¶ 15 Even if a marriage is invalid where it was contracted, however, a marriage can be recognized by another state with a more significant relationship to the parties and to the marriage. Restatement § 283(1). The overriding rule is that the law of the state with the more significant relationship governs. *See id.* at cmt. i. The basic policy is "protection of the justified expectations of

---

**3.** Ariz.Rev.Stat. ("A.R.S.") § 25–111(B) (2000), discussed *infra* at ¶ 21 *et seq.*

**4.** Article 86 requires in part that the parties present an application for marriage "to the Civil Registry Officer." Article 87 requires that the application be accompanied by certain documents, including witness statements and a medical certificate.
Article 87 also requires that:
the official shall read in a loud voice the marriage application, the documents ..., and question the witnesses as to whether the candidates are the same persons as to which the application makes reference to. In the affirmative, he/she will ask each of the candidates whether it is their will to unite in matrimony and, if satisfied, shall declare them united....
Article 89 states:
The Official of the Civil Registry, before whom an a[sic] marriage application has been presented ... will make the candidates ... acknowledge before him/her and individually, their signatures. The witnesses [sic] state-

ments ... shall be ratified under sworn statement, before the very Officer of the Civil Registry. He ... shall check the authenticity of the signature ... of the medical certificate presented. But above all, ... he shall demand that the candidates ratify that determination, explaining first what this regiment is comprised of and the impact that it will have on their assets.
Finally, Article 91 requires the candidates and four witnesses to "each appear before the Civil Registry Official" and requires the official to again read in a loud voice the same requirements of Article 87 above: read aloud the application, question the witnesses and the candidates, and declare them united.

**5.** Article 44 of the Jalisco Code authorizes substitution among Civil Registry Officials, but no evidence establishes that the woman who performed the ceremony had authority to act as a substitute.

the parties." *Id.* at cmt. b. Thus, when a marriage ceremony in one state is technically flawed and therefore invalid in that state, it can nonetheless be recognized in the state most concerned with the marital relationship and with the parties. *See id.* at cmt. i; 82 A.L.R.3d 1240 § 2(a) (1978) (recognition by forum state of marriage which, although invalid where contracted, would have been valid if contracted within forum state).

¶ 16 Arizona law recognizes a marriage performed elsewhere if the parties intended at the time to reside in Arizona and if their ceremony would have created a valid marriage if performed in Arizona. A.R.S. § 25–112 governs the validity and effect of marriages contracted elsewhere. It states:

A. Marriages valid by the laws of the place where contracted are valid in this state, except marriages that are void and prohibited by § 25–101.

B. Marriages solemnized in another state or country by parties intending at the time to reside in this state shall have the same legal consequences and effect as if solemnized in this state, except marriages that are void and prohibited by § 25–101.[6]

C. Parties residing in this state may not evade the laws of this state relating to marriage by going to another state or country for solemnization of the marriage.

■ ¶ 17 We presume the legislature used different terminology in these subsections to address different situations. *See Airport Props. v. Maricopa County,* 195 Ariz. 89, 96, ¶ 23, 985 P.2d 574, 581 (App.1999) (presumption that "the legislature does not intend to draft statutory provisions that are redundant, void, inert, trivial, superfluous or contradictory") (citing *Vega v. Morris,* 184 Ariz.

461, 463, 910 P.2d 6, 8 (1996)). Accordingly, § 25–112(A) and (B) apply to different situations.

¶ 18 First, § 25–112(A) concerns valid foreign marriages, which Arizona recognizes as valid unless expressly declared void by other Arizona statutory provisions. Subsection (A) does not apply because this marriage is not valid under Jalisco law.

¶ 19 Section 25–112(B) addresses something other than valid foreign marriages, namely certain foreign marriages considered *invalid* where they were performed. When parties intending to reside in Arizona solemnize their marriage elsewhere but the marriage is invalid where contracted, § 25–112(B) accords the same legal consequences and effect to the marriage "as if" it had been solemnized [7] in Arizona.

¶ 20 Section 25–112(B) governs this case. Husband and Wife, Arizona residents, solemnized their marriage in Mexico intending to reside in Arizona. Their marriage is invalid under Mexican law. Section 25–112(B) therefore directs us to treat the Mexican marriage "as if" it were solemnized in Arizona.

■ ¶ 21 Accordingly, we measure the Jalisco ceremony against Arizona's solemnization provision, A.R.S. § 25–111(B)(2). The part of that section relevant to the issues before us states:

B. A marriage contracted within this state is not valid unless . . .

2. The marriage is solemnized by a person authorized by law to solemnize marriages or by a person purporting to act in such capacity and believed in good faith by at least one of the parties to be so authorized.[8]

---

6. This action does not involve a marriage prohibited by A.R.S. § 25–101 (2000). That section bans marriages between certain blood relatives and between persons of the same sex.

7. A marriage is solemnized when entered "publicly before witnesses in contrast to a clandestine or common law marriage." Black's Law Dictionary 1392 (6th ed.1990). A solemnity is: "A rite or ceremony; the formality established by law to render a contract, agreement, or other act valid." *Id.*

8. Section 25–111(B) also requires a license. It is undisputed that the parties obtained a license from the proper Mexican authorities and that the license was duly recorded. We reject Husband's argument that the marriage license must come from an Arizona superior court. A.R.S. § 25–121(A) (2000) requires the clerk's license only to "be joined in marriage *in this state* . . ." (emphasis added). A duly issued license from another jurisdiction, obtained in compliance with the laws of that jurisdiction, is the equivalent of a license issued by the clerk of an Arizona superior court. In other words, the test created by A.R.S

¶ 22 If Husband and Wife had solemnized their marriage in Arizona, actual authority to perform the ceremony was not required. Pursuant to A.R.S. § 25–111(B)(2), all that was needed was one party's good faith belief that the person had authority. Whether Wife had such a good faith belief, therefore, determines the validity and effect of the marriage.

¶ 23 Husband argues that § 25–111 is limited to marriages contracted in Arizona. If the ceremony had been performed in Arizona, § 25–111 indeed would apply. But § 25–112(B) also instructs us to treat the foreign marriage "as if" it had been solemnized in Arizona.[9] Accordingly, § 25–111 applies and the superior court erred in finding otherwise.

¶ 24 Husband nevertheless argues that § 25–112(B) deals only with consequences and effects of marriages valid under subsection (A). He asserts that any other reading of subsection (B) renders subsection (A) meaningless.

¶ 25 It is Husband's interpretation that renders subsection (A) meaningless. Under subsection (A), a valid foreign marriage is recognized as valid in Arizona unless otherwise declared void by Arizona statute. If subsection (B) merely acknowledges that a valid foreign marriage has the legal consequences of a valid marriage, then it is superfluous. The more reasonable interpretation is that subsection (B) means something else: An invalid foreign marriage may nevertheless be recognized in Arizona.

¶ 26 Moreover, Husband's argument disregards the rule of statutory construction that the court will construe the statute consistent with the common law absent evident legislative intent to the contrary and that each word must be given effect. *See Carrow Co. v. Lusby,* 167 Ariz. 18, 21, 804 P.2d 747, 750

(1990) (absent a clear expression of legislative intent to repeal the common law rule, courts usually construe statutes consistently with common law). Our reading of subsection (B) is consistent with the common law.

¶ 27 The common law choice of law rules allow Arizona to recognize a marriage although that marriage is invalid under the law of the place of the ceremony. *See* Restatement § 283; 82 A.L.R.3d 1240 § 2(a) (1978) (recognition by forum state of invalid foreign marriage which would have been valid if contracted within forum state). Specifically, Arizona may "give the same incident to an invalid foreign marriage that it would give to a marriage that has been validly contracted within its territory. This may be done when the foreign marriage complies with the local requirements." Restatement § 284 cmt d. Our interpretation of § 25–112(B) harmonizes it with the common law as well as with subsection (A). Accordingly, we hold that a marriage invalid under the law where the ceremony occurred is recognized as valid in Arizona if it would have been valid had the ceremony been performed in Arizona.

¶ 28 Wife also challenges Judge Gama's ruling as an improper horizontal appeal. We must reach this issue because, although the judge decided that Arizona's good faith statute does not apply, he also determined that Husband's new evidence negated Wife's good faith belief.

¶ 29 A horizontal appeal is a request that "a second trial judge [ ] reconsider the decision of the first trial judge in the same matter, even though no new circumstances have arisen in the interim and no other reason justifies reconsideration." *Powell–Cerkoney v. TCR–Mont. Ranch Joint Venture, II,* 176 Ariz. 275, 278–79, 860 P.2d 1328, 1331–32 (App.1993). Such reconsiderations are disfavored because "they waste judicial resources . . . and . . . encourage 'judge

§ 12–112(B) requires us to consider the formalities "as if" they had been performed in Arizona.

9. Wife asserts that *Barbosa–Johnson v. Johnson,* 174 Ariz. 567, 569, 851 P.2d 866, 868 (App. 1993), directs the superior court to apply A.R.S. § 25–112(B) in this situation. In *Barbosa–Johnson,* however, we were not faced with an invalid foreign marriage and did not address the precise

issue before this Court. In *Barbosa–Johnson,* the minister who performed the ceremony in Puerto Rico failed to file the Arizona marriage license with the clerk of the superior court in violation of Arizona law. Applying Arizona law, we upheld the validity of the marriage finding that violation of the statutory requirement did not invalidate the marriage.

shopping.' " *Id.* (citing *Hibbs v. Calcot, Ltd.,* 166 Ariz. 210, 214, 801 P.2d 445, 449 (App. 1990)). However, the policy against horizontal appeals should not be applied "when an error in the first decision renders it manifestly erroneous or unjust or when a substantial change occurs in essential facts or issues, in evidence, or in the applicable law." *Id.* at 279, 860 P.2d at 1332 (citations omitted). Generally, a judge should not reconsider a motion already decided by another superior court judge unless new circumstances are demonstrated. *Dunlap v. City of Phoenix,* 169 Ariz. 63, 66, 817 P.2d 8, 11 (App.1990) (quoting *Lemons v.Super. Ct.,* 141 Ariz. 502, 504, 687 P.2d 1257, 1259 (1984)).

¶ 30 We conclude that Husband's motion was not a vehicle for an improper horizontal appeal. Husband alleged that new evidence shed light on Wife's good faith belief that the woman performing the marriage ceremony had the authority to do so. Because we determine that Wife's good faith belief was the relevant inquiry to determine the validity of this marriage, Husband's new evidence did not merely ask the judge to decide contrary to the prior decision by another judge.

¶ 31 The fact that Husband's motion was not a prohibited horizontal appeal does not mean that the motion was meritorious, however. Husband's evidence does not warrant relief from his stipulation at trial that Wife held the requisite good faith belief. *See Rutledge v. Ariz. Bd. of Regents,* 147 Ariz. 534, 550, 711 P.2d 1207, 1223 (App.1985) (listing circumstances in which a stipulation may be set aside). Before trial, Wife admitted at her deposition that she had filed her 1990 tax return in 1991 as single, even though she asserted that she had believed she was married at the time. Despite this evidence, Husband stipulated that Wife "reasonably believed in good faith that the woman who solemnized the marriage had the authority to do so." Husband also did not establish why he could not have sooner obtained the attorney's affidavit that Wife had been unsure of the validity of the marriage. Moreover, this evidence does not squarely negate the facts

available to Husband when he entered into the stipulation: Wife's uncertainty is far from an admission that she knew that the person lacked authority. Husband was not entitled to relief from the order entered as a result of that stipulation.

¶ 32 Husband's perjury allegation also does not support dismissal. At her deposition, Wife testified that she had filed as married in 1991 and 1992. Later in her deposition, Wife testified that she did not recall when she had filed these tax returns or what status she had claimed. Wife also provided a release dated July 19, 1999, authorizing Husband's attorney to obtain her tax returns. We do not find that the evidence supports Husband's claim that Wife intentionally misstated her filing status.

¶ 33 The evidence newly presented in Husband's motion for reconsideration did not entitle him to relief. Accordingly, we reverse the order granting the motion for reconsideration and dismissing Wife's petition for dissolution and remand this matter for further dissolution proceedings.[10]

¶ 34 Wife requests an award of her attorneys' fees to date pursuant to A.R.S. §§ 25–324 (2000), 12–341.01(C)(Supp.2001), 12–349 (1992) and 12–350 (1992). Wife alleges that Husband's repetitive motions have caused unconscionable delay and increased the cost of litigation. Husband counters that an award of fees would be "premature" as Wife is not yet the successful party.

¶ 35 A.R.S. § 12–341.01(C) authorizes an award of attorneys' fees upon "clear and convincing evidence that the claim or defense constitutes harassment, is groundless and not made in good faith." Husband's multiple motions caused substantial delay. However, § 12–341.01(C) requires clear and convincing evidence that a party's actions constitute harassment, are groundless and not made in good faith. We lack such evidence.

¶ 36 Section 12–349 similarly authorizes an award of attorneys' fees for claims brought without substantial justification, claims solely or primarily brought for

---

10. Because we find the marriage is valid, we need not decide whether the superior court erred

in rejecting Wife's estoppel claim.

delay or harassment, or if an attorney or party unreasonably expands or delays the proceedings.[11] Section 12–349 requires that Wife show by a preponderance of the evidence that Husband's motions were brought without substantial justification, or solely or primarily for delay or harassment, or that they unreasonably expanded or delayed the proceedings. *See Phoenix Newspapers, Inc. v. Dep't of Corr.*, 188 Ariz. 237, 244, 934 P.2d 801, 808 (App.1997). Wife claims only that Husband's repetitive motions have caused unconscionable delay and have caused her to incur attorneys' fees. Because Wife has failed to convince us that Husband *unreasonably* delayed the proceedings, however, we deny her request for fees pursuant to § 12–349.

¶ 37 Under A.R.S. § 25–324, "courts have discretion to award attorneys' fees in a divorce case 'after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings.' " *Gutierrez v. Gutierrez*, 193 Ariz. 343, 351, ¶ 32, 972 P.2d 676, 684 (App.1998)(quoting A.R.S. § 25–324). "The purpose of the statute is to provide a remedy for the party least able to pay." *In re Marriage of Zale*, 193 Ariz. 246, 251, ¶ 20, 972 P.2d 230, 235 (1999). Because we lack evidence of the parties' current financial resources and because this case is being remanded for further proceedings, we leave to the superior court any award of attorneys' fees pursuant to A.R.S. § 25–324 based on its consideration of the parties' current financial resources. *See id.* (remanding fee request to superior court) (citing *Sharp v. Sharp*, 179 Ariz. 205, 211, 877 P.2d 304, 310 (App.1994)).

¶ 38 Accordingly, we reverse the order finding the marriage invalid and dismissing Wife's petition for dissolution. We hold the marriage is valid and remand for further proceedings on the dissolution petition and for consideration of Wife's request for fees.

11. A.R.S. § 12–350, also cited by Wife, does not independently authorize fee awards, but guides the court in making awards authorized by § 12–

CONCURRING: JON W. THOMPSON, Presiding Judge, and DANIEL A. BARKER, Judge.

349. We therefore do not address the former provision separately.