OPINION
 

 BARKER, J.
 

 ¶ 1 In 1996, the Arizona legislature amended this state’s marriage statutes to provide that certain marriages, even though “valid by the laws of the place where contracted,” were nonetheless “void and prohibited” in Arizona. S.B. 1038, 42d Leg., 2d Reg. Sess. (Ariz.1996); Ariz.Rev.Stat. (“A.R.S.”) § 25-112(A) (“1996 amendments”). We resolve statutory, choice-of-law, and constitutional issues that arise out of the 1996 amendments.
 

 I.
 

 ¶ 2 Alan R. Cook (“appellant”) appeals from a decree of dissolution. He contests the trial court’s jurisdiction, alleging that there was no valid marriage.
 
 [1]
 

 ¶ 3 Appellant and Peggy Cook (“appellee”) were married on April 7, 1984 in Virginia. They are first cousins. Marriage between first cousins was then (and is now) valid in Virginia.
 
 See
 
 Va.Code Ann. §§ 20-38.1 (1978) and 20-45.1 (1975) (statutes listing void and prohibited marriages do not include marriage between first cousins); Va.Code Ann. §§ 20-38.1 and 20-45.1 (West, WEST-LAW through 2004 Spec. Sess. II) (same). The parties have one minor child, born July 11, 1986.
 

 ¶ 4 In 1989 the parties moved to Arizona. Arizona’s statutory scheme (then and now) provides that a marriage between first cousins
 
 in Arizona
 
 is “void.” A.R.S. § 25-101.
 
 [2]
 
 However, when the Cooks moved to Arizona,
 
 *479
 
 our law also provided that “[m]arriages valid by the laws of the place where contracted are
 
 valid
 
 in this state.” Arizona Code of 1939, § 63-108 (currently codified as A.R.S. § 25-112(A)) (emphasis added). Effective July 20, 1996, the legislature amended § 25-112(A) to add the phrase, “except marriages that are void and prohibited by § 25-101.” 1996 amendments. The text of A.R.S. § 25-112, with the 1996 amendments in bold, is as follows:
 

 A. Marriages valid by the laws of the place where contracted are valid in this state, except marriages that are void and prohibited by § 25-101.
 

 B. Marriages solemnized in another state or country by parties intending at the time to reside in this state shall have the same legal consequences and effect as if solemnized in this state, except marriages that are void and prohibited by § 25-101.
 

 C. Parties residing in this state may not evade the laws of this state relating to marriage by going to another state or country for solemnization of the marriage.
 

 A.R.S. § 25-112. Thus, under the plain language of § 25-112(A), the Cook’s marriage was “valid” in Arizona in 1989 (when they moved here) but subsequently declared “void” by the 1996 amendments.
 

 ¶ 5 On January 3, 1997, appellant filed a petition for marital dissolution in the superi- or court. Though initially alleging there was a marriage, appellant subsequently filed a motion to amend/dismiss dissolution proceedings alleging that the parties’ marriage was void and prohibited under A.R.S. §§ 25-101 and -112(A). The trial court denied the motion. It held, in part, that Arizona law prior to the 1996 amendments did not preclude recognition of a marriage valid in other states that was void in Arizona pursuant to § 25-101. It then reasoned that because the law prior to the 1996 amendments permitted recognition of the first cousin marriage in this circumstance, the 1996 amendments could not be retroactively applied to void a marriage that was valid at the time the parties moved to Arizona.
 

 ¶ 6 After denial of the motion, trial ensued. The trial court entered various orders as to property, spousal maintenance, and other issues. Appellant timely appealed. The only issue we take up in this opinion is that of the validity of the marriage.
 

 II.
 

 ¶ 7 The first question we must decide is whether the validity of the marriage should be determined under Arizona or Virginia law. If determined under Virginia law, the marriage is valid; if determined under Arizona law, we are presented with statutory and constitutional issues as to whether the marriage is valid. It is unnecessary to address those issues if Virginia law applies. When the material facts, as here, are uncontested this question is a matter of law which we determine
 
 de novo. Swanson v. Image Bank, Inc.,
 
 206 Ariz. 264, 266, ¶ 6, 77 P.3d 439, 441 (2003) (“Choice-of-law issues are questions of law, which we decide
 
 de novo.”).
 

 ¶ 8 With a significant exception applicable here, Arizona follows the general rule that it is the law of the place where the marriage is celebrated, not the law of the place where the divorce takes place, that determines the validity of the marriage.
 
 Horton v. Horton,
 
 22 Ariz. 490, 494, 198 P. 1105, 1107 (1921) (recognizing the “common-law rule” that when “[c]onsidered merely as a contract, [a marriage] is valid everywhere if entered into according to the lex loci.”)
 
 [3]
 
 . As our supreme court has stated:
 

 It is the general rule of law that a marriage valid under the laws of the country where contracted will be recognized as valid everywhere. The question of the validity of the marriage, therefore, depends upon the place where it is contracted, and not the place where an action for divorce is brought.
 

 Gradias v. Gradias,
 
 51 Ariz. 35, 36-37, 74 P.2d 53, 53 (1937) (citation omitted). The reasons for this rule have been described as the “predictability and the interstate order arising from society’s interest in marriage.”
 
 *480
 

 Vandever v. Indus. Comm’n,
 
 148 Ariz. 373, 376, 714 P.2d 866, 869 (App.1985) (citation omitted).
 

 ¶ 9 Just as enduring as the general rule, however, has been Arizona’s exception to that rule; namely, that the
 
 power
 
 to define a valid marriage is vested in this state’s legislature and not in the legislature (or judiciary) of another state nor in the judiciary of this state.
 
 Horton,
 
 22 Ariz. at 495-96, 198 P. at 1107;
 
 Vandever,
 
 148 Ariz. at 376-77, 714 P.2d at 869-70. Our supreme court described that power as follows:
 

 The Legislature undoubtedly had the power to enact what marriages shall be void in this state, notwithstanding their validity in the state where celebrated,
 
 whethér contracted between parties who were in good faith domiciled in the state where the ceremony was performed, or between parties who, being domiciled in this state, left the state for the purpose of avoiding its statutes and married.
 

 Horton,
 
 22 Ariz. at 495, 198 P. at 1107 (emphasis added). Thus, we have long recognized that the legislature of this state, notwithstanding the general rule, may declare what marriages are valid (or void) in Arizona
 
 even if
 
 the marriage pertains to persons “who were in good faith domiciled in the state where the ceremony was performed”
 
 and
 
 the marriage is valid in that state.
 

 ¶ 10 Of course, as with all exercises of legislative power, the legislature’s enactments on this subject are subject to the limitations of the United States and the Arizona Constitutions. U.S. Const. art. VI, cl. 2 (Supremacy Clause); Ariz. Const. art. 2, § 3 (“The Constitution of the United States is the supreme law of the land.”);
 
 Marburg v. Madison,
 
 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803);
 
 Cohen v. State,
 
 121 Ariz. 6, 588 P.2d 299 (1978) (declaring legislation invalid based on constitutional grounds);
 
 see also Standhardt v. Superior Court,
 
 206 Ariz. 276, 77 P.3d 451 (App.2003) (concluding that Arizona’s legislative enactment limiting marriage to one man and one woman was constitutional). Thus, absent constitutional considerations, our cases hold that the parameters of marriage in
 
 Arizona
 
 — whether originally contracted in this state or elsewhere — are a matter for the people of
 
 Arizona
 
 acting through the legislature or by direct mandate. Those parameters are not a matter for the people, legislature, or courts of another state.
 

 ¶ 11 In considering the choice-of-law issues surrounding out-of-state marriages, it is important to consider Arizona’s treatment of the pertinent principles set forth in the Restatement (Second) of Conflict of Laws (1971) (“Restatement”) pertaining to marriage. While Arizona invokes some principles from the Restatement, we do not follow it in certain significant regards. Specifically, Restatement § 283(1) and (2) both invoke the element of which state had “the most significant relationship” to the parties at the time of the marriage in determining which state’s law to apply. Section 283(1) provides that “[t]he validity of a marriage will be determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the marriage under the principles stated in § 6.” Section 6(1) then provides as follows: “A court, subject to constitutional restrictions, will follow a statutory directive of
 
 its own state
 
 on choice of law.” (Emphasis added.) This principle from § 6(1) giving preeminence to the legislative pronouncement of “its own state” is consistent with
 
 Horton,
 
 and subsequent authorities.
 
 See, e.g., Vandever,
 
 148 Ariz. at 376-77, 714 P.2d at 869-70. Arizona law follows § 6(1).
 

 ¶ 12 Section 283(2) of the Restatement, however, does not include this deference to the legislature of the forum state. It states the general rule that “[a] marriage which satisfies the requirements of the state where the marriage was contracted will everywhere be recognized as valid.” Unless the legislature has declared otherwise, Arizona follows this formulation of the general rule.
 
 Supra
 
 ¶¶ 8-9. Arizona does not, however, follow the exception stated in § 283(2).
 

 ¶ 13 The exception that Restatement § 283(2) provides to the general rule is based on the policy of the state with the “most significant relationship.” Section 283(2) applies the general rule “unless it violates the strong public policy
 
 of another state which had the most significant relationship
 
 to the spouses and the marriage at the time of the
 
 *481
 
 marriage.” Restatement (Second) of Conflict of Laws § 283(2) (1971) (emphasis added). As
 
 Horton
 
 expressly holds, the Arizona legislature is free to ignore (subject to constitutional constraints) the policy considerations of another state in determining whether marriages are valid or void in Arizona
 
 regardless
 
 of whether that other state had the more significant relationship.
 
 “The Legislature undoubtedly had the power to enact what marriages shall be void in this state, notwithstanding their validity in the state where celebrated,
 
 whether contracted between parties who were in good faith domiciled in the state where the ceremony was performed” or not.
 
 Horton,
 
 22 Ariz. at 495, 198 P. at 1107. Two cases illustrate the point.
 

 ¶ 14 In
 
 Vandever,
 
 the parties were arguably domiciled in Arizona, yet one party contended that a common-law marriage had been entered into pursuant to the law of Colorado. This court expressly rejected a request to “incorporate[ ] into A.R.S. § 25-112 a choice-of-law analysis that would require this court to discern which state has the most significant contacts with the [marriage] relationship.” 148 Ariz. at 376, 714 P.2d at 869. Though citing those portions of § 283(2) that allowed for exceptions to the general rule based on strong policy considerations, the court rejected the request that it look to the state with the “most significant relationship” as the Restatement provided.
 
 Id.
 

 ¶ 15
 
 Vandever’s
 
 analysis was based on
 
 Horton’s
 
 pronouncement regarding the power of the legislature to define what was, and what was not, a valid marriage.
 
 Id.
 
 at 376-77, 714 P.2d at 869-70.
 
 Vandever
 
 determined the public policy considerations as evidenced by Arizona’s statutory enactments.
 
 Id.
 
 (referencing those marriages specified as void and prohibited in A.R.S. § 25-101).
 
 Van-dever
 
 declined to tie the public policy reasons justifying refusal to accept a marriage to the state with the most significant relationship. It looked to, and followed,
 
 Arizona’s
 
 statutory enactments in determining the public policy considerations that it should apply.
 
 See Taylor v. Graham County Chamber of Commerce,
 
 201 Ariz. 184, 191, ¶ 27, 33 P.3d 518, 526 (App.2001) (“[W]hen, as here, the legislature has clearly spoken on a matter within its domain, its word constitutes public policy on that subject and controls, assuming no constitutional impediments exist.”) (citing
 
 Ray v. Tucson Med. Ctr.,
 
 72 Ariz. 22, 35, 230 P.2d 220, 229 (1951) (“The declaration of ‘public policy' is primarily a legislative function.”));
 
 Harrison v. Laveen,
 
 67 Ariz. 337, 344, 196 P.2d 456, 460 (1948) (“[T]he matter of determining what is ‘good public policy’ is for the executive and legislative departments and ... the courts must base their decisions on the law as it appears in the constitution and statutes.”). Thus, the
 
 Vandever
 
 court appropriately rejected the request to engraft a “most significant relationship” test onto A.R.S. § 25-101 and -112 in determining what marriages would be valid or void in Arizona.
 
 [4]
 

 ¶ 16 A second pertinent case to this point is
 
 Donlann v. Macgurn,
 
 203 Ariz. 380, 55 P.3d 74 (App.2002). In that case a marriage was performed in Jalisco, Mexico. Both parties were residents of Arizona. Applying the general rule, the validity of the marriage would then turn on Mexican law. The marriage did not comply with Mexican law because “the person who signed the marriage certificate did not perform the ceremony.”
 
 Id.
 
 at 383, ¶ 14, 55 P.3d at 77. Because the parties in good faith believed that a valid ceremony had been performed, and in such circumstances Arizona law would recognize the ceremony, the court recognized the marriage.
 
 Id.
 
 at 382-84, 387, ¶¶ 6, 15-20, 38, 55 P.3d at 76-78, 81.
 
 Donlann,
 
 however, also pointed to the justified expectations of the parties and the fact that the most significant relationship of the parties was to the state of Arizona.
 
 Id.
 
 at 383-84, ¶¶ 15-20, 55 P.3d at 77-78. It found that a marriage that was
 
 *482
 
 “technically flawed” in the jurisdiction where performed would nonetheless be recognized in Arizona as it was
 
 consistent
 
 with Arizona law.
 
 Id.
 
 at 384, ¶ 15, 55 P.3d at 78. Thus,
 
 Donlann
 
 did not employ the “most significant relationship” consideration to give effect to a marriage that would otherwise not be recognized in Arizona; it considered the relationship of the parties to the forum to explain
 
 why
 
 it was giving effect to a marriage that was valid in Arizona but
 
 not
 
 in the place where performed.
 
 Id.; see
 
 Restatement § 283(2) cmt. i. Additionally, the marriage statute at issue here does not go to a “technical flaw” in a marriage proceeding (as in Donlann), but rather to a substantive decision based on a statutory determination of who may and who may not enter into a marriage.
 

 ¶ 17 The general rule explicitly stated in
 
 Donlann
 
 is the same rule from
 
 Horton, Vandever,
 
 and here:
 
 “Unless strong public policy exceptions require otherwise,
 
 the validity of the marriage is generally determined by the law of the place of marriage.” 203 Ariz. at 383, ¶ 12, 55 P.3d at 77 (emphasis added). The “strong public policy exceptions” we look to in determining which state’s law to apply are those pronounced by the
 
 Arizona
 
 legislature.
 
 Horton,
 
 22 Ariz. at 495, 198 P. at 1107;
 
 Vandever,
 
 148 Ariz. at 376, 714 P.2d at 869;
 
 see also supra
 
 ¶ 15 for additional authorities. They are stated (at least in part) in A.R.S. §§ 25-101 and -112, which declare certain marriages void. Contrary to Restatement § 283(2), the policy considerations are not those of some other state. This is the case even if that other state, as here, has a more significant relationship to the parties at the time the marriage was contracted.
 

 ,¶ 18 That our cases instruct us to look to Arizona’s statutes on the validity of marriage — even if another state has a more significant relationship — is particularly apt given the importance of marriage and the present divergent views on that subject. Marriage is a foundation stone in the bedrock of our state and communities. As the United States Supreme Court long ago said, “marriage ... is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress.”
 
 Maynard v. Hill,
 
 125 U.S. 190, 211, 8 S.Ct. 723, 31 L.Ed. 654 (1888);
 
 see also Skinner v. Oklahoma,
 
 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (describing marriage as “fundamental to the very existence and survival of the race”);
 
 Moran v. Moran,
 
 188 Ariz. 139, 144, 933 P.2d 1207, 1212 (App.1996) (“[T]he state is also
 
 vitally concerned
 
 with the establishment of marriages.”) (emphasis added);
 
 Woodworth v. Woodworth,
 
 202 Ariz. 179, 183, ¶ 22, 42 P.3d 610, 614 (App.2002) (“The health of the family is
 
 critical
 
 to the health and vibrancy of our communities and our state.”) (emphasis added). However, notwithstanding the foundational aspects of marriage, there is no certainty that states, communities, and citizens do (or will) agree on its parameters or “its purity,” as
 
 Maynard
 
 described it. There are strongly divergent views on what the scope of marriage should be among the fifty states.
 
 [5]
 
 Some argue that traditional
 
 *483
 
 “marriage-based families ... are incomparably superior to any other model” of family structure. Lynn D. Wardle,
 
 Is Marriage Obsolete?,
 
 10 MICH. J. GENDER & L. 189, 214 (2003). Others urge that “we destroy the marital model altogether.” Martha Al-bertson Fineman, THE NEUTERED MOTHER, THE SEXUAL FAMILY AND OTHER TWENTIETH CENTURY TRAGEDIES 5 (1995). Citizens of Arizona have no control over what policies other states have adopted, or may in the future adopt, that pertain to marriage. Arizona citizens, however, do control (through the process of elections) the policies their own legislature will adopt on this foundational issue. Unless constitutionally required, Arizona should not be held hostage to the policies of another state on a subject so vital as who may or may not marry.
 

 ¶ 19 Thus, under a conflict-of-law analysis, Arizona authorities require us to recognize the preeminence of the Arizona legislature’s express statutory enactments as to whether a particular out-of-state marriage is valid or void in Arizona. We do not apply the law from the state of Virginia, even though Virginia had the most significant relationship to the parties at the time of the marriage.
 

 III.
 

 A.
 

 ¶ 20 Having determined that we apply Arizona law, as opposed to Virginia law,
 
 [6]
 
 we now turn to the Arizona statute.
 

 ¶ 21 When considering a statute we are required to give it, if possible, a constitutional interpretation.
 
 Hayes v. Continental Ins. Co.,
 
 178 Ariz. 264, 272, 872 P.2d 668, 676 (1994) (“[I]f possible this court construes statutes to avoid rendering them unconstitutional.”) (citations omitted). In a circumstance “where alternate constructions are available, we should choose that which avoids constitutional difficulty.”
 
 Slayton v. Shumway,
 
 166 Ariz. 87, 92, 800 P.2d 590, 595 (1990) (citations omitted);
 
 see also Lake Havasu City v. Mohave County,
 
 138 Ariz. 552, 558, 675 P.2d 1371, 1377 (App.1983) (“[I]f the statute is susceptible to two interpretations, one of which renders it unconstitutional, we must adopt the interpretation favoring its validity.”) (citation omitted).
 

 ¶ 22 Appellee argues that her marriage was recognized in Arizona prior to the 1996
 
 *484
 
 amendments and became, in her case, a substantively vested right. She further argues that if we construe the 1996 amendments to take away this vested right, A.R.S. § 25-112(A) runs afoul of Arizona’s prohibition against retroactive legislation. For the following reasons, we agree. Because an alternative construction is available to us, we adopt that construction.
 

 B.
 

 ¶ 23 In 1989, when the parties moved to Arizona, they had a marriage that was validly recognized in Virginia. Section 25-112(A) expressly provided that marriages valid in another state were valid here. The only statutory exceptions occurred when residents of this state left Arizona to contract a marriage prohibited in Arizona with the intent of returning. A.R.S. § 25-112(B), (C);
 
 see In re Mortenson’s Estate,
 
 83 Ariz. 87, 90, 316 P.2d 1106, 1107 (1957) (involving residents of this state and holding that “[a] marriage declared void by our statute cannot be purified or made valid by merely stepping across the state fine for purposes of solemnization”). The 1996 amendments now declare appellee’s marriage “void.” A.R.S. § 25-112(A). Our cases hold that a “void” marriage “shall have no force and effect for any purpose within the state of Arizona.”
 
 In re Mortenson’s Estate,
 
 83 Ariz. at 90, 316 P.2d at 1107. Thus, if we apply the plain language of the 1996 amendments to the prior statutory scheme, this legislation has a retroactive effect on appellee’s marriage by declaring that it has “no force and effect for any purpose.”
 
 Id.
 

 ¶ 24 Not all retroactive legislation, however, is prohibited. “A statute that is merely procedural may be applied retroactively.”
 
 San Carlos Apache Tribe v. Superi- or Court (Bolton),
 
 193 Ariz. 195, 205, ¶ 15, 972 P.2d 179, 189 (1999) (citation omitted). However, our supreme court has made it plain that “legislation may not disturb
 
 vested
 
 substantive rights by retroactively changing the law that applies to completed events.”
 
 Id.
 
 (citation omitted) (emphasis added);
 
 Hall v. A.N.R. Freight Sys., Inc.,
 
 149 Ariz. 130, 140, 717 P.2d 434, 444 (1986) (“[L]egislation may not retroactively disturb vested rights.”);
 
 State v. Murray,
 
 194 Ariz. 373, 375, ¶ 6, 982 P.2d 1287, 1289 (1999) (“[T]he legislature ... ‘may not disturb vested substantive rights.’ ”) (quoting
 
 San Carlos,
 
 193 Ariz. at 205, 972 P.2d at 189).
 
 [7]
 

 ¶ 25 Appellant argues that the 1996 amendments are procedural only, not substantive. We reject this argument. If given the construction appellant urges, a marriage that was previously recognized on behalf of Arizona residents of seven years’ duration would be taken away from them. The statutory grant of marriage is more than a procedural right. It goes to the bedrock of our society.
 
 Supra
 
 ¶ 18. Marriage is a substantive right. As was the case in
 
 Hall,
 
 “[t]he critical inquiry in retroactivity analysis [here] is not whether a statute affects a
 
 substantive
 
 right but whether a statute affects a
 
 vested
 
 right.” 149 Ariz. at 139, 717 P.2d at 443 (second emphasis in original). The Arizona Supreme Court continued;
 

 Thus, the implicit meaning of the statement “substantive rights may not be retroactively impaired” is “substantive rights may not be impaired
 
 once vested.”
 

 Id.
 
 at 139—40, 717 P.2d at 443-44. The inquiry for us, then, is whether appellee had a
 
 vested
 
 right in her marriage.
 

 ¶ 26 Determining whether that right (the recognition of one’s marriage) has vested does not fit neatly into our jurisprudence concerning vested rights.
 
 [8]
 
 The language of
 
 *485
 
 the law in this area deals primarily with
 
 property
 
 rights.
 
 See Aranda v. Indus. Comm’n,
 
 198 Ariz. 467, 11 P.3d 1006 (2000) (workers’ compensation benefits);
 
 San Carlos,
 
 193 Ariz. 195, 972 P.2d 179 (water rights);
 
 Murray,
 
 194 Ariz. 373, 982 P.2d 1287 (parole eligibility restrictions);
 
 O’Brien v. Escher,
 
 204 Ariz. 459, 65 P.3d 107 (App.2003) (amendment to statute proscribing jail term after act committed);
 
 Mejia v. Indus. Comm’n,
 
 202 Ariz. 31, 39 P.3d 1135 (App.2002) (temporary total disability compensation benefits);
 
 In re Marriage of Ramirez,
 
 173 Ariz. 135, 840 P.2d 311 (App.1992) (right to child support payments vests as payments become due);
 
 St. Joseph’s Hosp. and Med. Ctr. v. Superior Court (Schneider),
 
 164 Ariz. 454, 793 P.2d 1121 (App.1990) (statutorily granted right to review panel vested upon filing of action);
 
 Godbey v. Roosevelt Sch. Dist. No. 66,
 
 131 Ariz. 13, 638 P.2d 235 (App.1981) (accumulated paid sick leave);
 
 Allen v. Fisher,
 
 118 Ariz. 95, 574 P.2d 1314 (App.1977) (medical malpractice claim);
 
 Rio Rico Props., Inc. v. Santa Cruz County,
 
 172 Ariz. 80, 834 P.2d 166 (Tax 1992) (tax refunds);
 
 see also Thurston v. Judges’ Ret. Plan,
 
 179 Ariz. 49, 876 P.2d 545 (1994) (wife’s right to survivor benefits vests when husband dies). Though the right to have one’s marriage recognized indeed has ramifications for property rights, it is undeniably of broader scope.
 
 Supra
 
 ¶ 18.
 

 ¶ 27 Notwithstanding the application of the “vested right” concept primarily to cases involving property, the
 
 standard
 
 for determining such rights has been defined to allow recognition of the right here. As early as 1913 our supreme court defined “vested” rights as follows:
 
 Steinfeld v. Nielsen,
 
 15 Ariz. 424, 465, 139 P. 879, 896 (1913) (quoting
 
 Pearsall v. Great N. Ry. Co.,
 
 161 U.S. 646, 673, 16 S.Ct. 705, 40 L.Ed. 838 (1896)) (citations omitted) (emphasis added). Certainly, the status of being married is “an immediate fixed right to present or future enjoyment.”
 
 Steinfeld,
 
 15 Ariz. at 465, 139 P. at 896. Additionally, “the interest [the recognition of marriage] does not depend on a period, or an event, that is uncertain.”
 
 Id.
 
 Under this standard, and by virtue of residing in Arizona for seven years when Arizona’s legislature expressly authorized the marriage into which she had entered, appellee’s right to have her marriage recognized “vested.”
 

 “Rights are vested, in contradistinction to being expectant or contingent. They are vested, when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest____”
 
 A “vested right” is defined to be an immediate fixed right to present or future enjoyment, or where the interest does not depend on a period, or an event, that is uncertain.
 

 ¶ 28 Though not controlling, our conclusion that appellee has a vested right in the validity of her marriage is also supported by Arizona law pertaining to community property. A spouse’s interest in the marital community includes a “vested property interest.”
 
 Hatch v. Hatch,
 
 113 Ariz. 130, 134, 547 P.2d 1044, 1048 (1976). In
 
 Hatch,
 
 our supreme court held that the trial “court’s unequal property distribution was ... an unconstitutional deprivation of the [wife’s] vested property interest in the community.”
 
 Id.
 
 The
 
 Hatch
 
 court cited with approval authority from other jurisdictions holding “the interest of the wife is a vested one and not a mere expectancy____
 
 The interest is of such a nature that, if it were sought to be divested by a statute seeking to abolish the community, the same would probably be unconstitutional as destroying a vested right.” Id.
 
 at 131-32, 547 P.2d at 1045-46 (citations omitted) (emphasis added);
 
 see also Grimditch v. Grimditch,
 
 71 Ariz. 198, 204, 225 P.2d 489, 492 (1951) (holding spouse had “vested right in the community property”).
 

 C.
 

 ¶ 29 We emphasize that we, as a court, do not act to
 
 create
 
 a right. Prior to 1996, the Arizona
 
 legislature
 
 specifically stated that “[m]arriages valid by the laws of the place where contracted are valid in this state.” Arizona Code of 1939, § 63-109 (currently codified as A.R.S. § 25-112(A)). When the parties moved from Virginia to
 
 *486
 
 Arizona in 1989, their marriage was valid
 
 under the laws of the state of Arizona,
 
 not simply under Virginia law. Sections 25-112(B) and (C) only precluded marriages validly performed out of state when those marriages were undertaken “by parties intending at the time to reside in this state” or “parties residing in this state” who sought to “evade the laws of this state relating to marriage by going to another state or country for solemnization of the marriage.” A.R.S. §§ 25-112(B), (C).
 

 ¶ 30
 
 Horton
 
 expressly recognized the legislature’s ability to declare marriages “void” that were “valid[] in the state where celebrated whether [1] contracted between parties who were in good faith domiciled in the state where the ceremony was performed, or [2] between parties who, being domiciled in this state, left the state for the purpose of avoiding its statutes and married.” 22 Ariz. at 495, 198 P. at 1107. The legislature chose to declare the second category that
 
 Horton
 
 identified (when Arizona residents sought to evade the law) “void” prior to 1996. This is represented by A.R.S. § 25-112(B) and (C). The legislature did not declare the first category (marriages entered into that were contrary to Arizona’s law but not contracted by Arizona residents with the intent to evade Arizona’s law) “void” until the 1996 amendments. Appellee clearly falls into the first category, for which the legislature chose not to act until 1996.
 

 ¶ 31 Thus, the statutory scheme in place in 1989, when the parties moved here, expressly recognized appellee’s marriage. The exceptions identified in § 25-112(B) and (C) are inapplicable as neither appellee nor appellant sought to evade Arizona law when they married in Virginia. They were validly married in Virginia before coming to Arizona. The fact that Arizona would have prohibited their marriage, had they resided here, is of no consequence as the legislature (up until the 1996 amendments) expressly chose to recognize their valid out-of-state marriage.
 

 ¶ 32 Accordingly, in the context of a claim of a “void” marriage under § 25-112(A), we hold that one’s right to have an out-of-state marriage deemed valid in the state of Arizona vests upon the following conditions: (1) the marriage was valid in the state where contracted; (2) the parties to the marriage were residents of Arizona prior to the enactment of the amendment to § 25-112(A) on July 20, 1996; and (3) that during this period of residency in Arizona their marriage was validly recognized under the statutory scheme then in place in Arizona.
 
 [9]
 

 D.
 

 ¶ 33 By construing the statute to apply prospectively only, we harmonize the 1996 amendments with Arizona’s constitutional prohibitions against retroactive legislation. We do not impair the legislature’s expressly recognized ability to declare as “void” marriages recognized as valid in other jurisdictions,
 
 Horton,
 
 22 Ariz. at 495, 198 P. at 1107,
 
 so long as
 
 the party asserting the right to the valid out-of-state marriage did not have a vested right as defined herein. Appellant asserts that we should construe the term “void” to apply to all marriages existing in the state of Arizona at the time of the 1996 amendments. We agree this is a plausible construction, as a “void” marriage has been construed to mean that the marriage “shall have no force and effect for any purpose within the State of Arizona.”
 
 In re Mortenson’s Estate,
 
 83 Ariz. at 90, 316 P.2d at 1107. However, as we have discussed above, giving such a reading creates a significant constitutional concern.
 

 ¶ 34 Further, A.R.S. § 1-244 (2000) expressly provides that “[n]o statute is retroactive unless expressly declared therein.” We
 
 *487
 
 can give effect to the legislature’s use of the word “void” in the 1996 amendments by applying that term to exclude vested rights in existing marriages as we have described them. Had the legislature chosen to nullify existing marriages (thus having the retroactive effect described) it could have expressly stated so. It did not.
 

 ¶ 35 Accordingly, we can give legitimate meaning to the term “void” in the 1996 amendments by applying it to marriages from other jurisdictions in which the parties had no vested right to have their marriage recognized in Arizona. As to these marriages, the use of the term “void” applies and means that such a marriage “shall have no force and effect for any purpose within the State of Arizona.”
 
 In re Mortenson’s Estate,
 
 83 Ariz. at 90, 316 P.2d at 1107. By construing the term “void” to apply to marriages where rights in Arizona have not “vested,” we adopt an “alternate construction ]” that “avoids constitutional difficulty” as required by our law.
 
 Slayton,
 
 166 Ariz. at 92, 800 P.2d at 595.
 

 IV.
 

 ¶ 36 For the reasons set forth above, and those in the separately filed memorandum decision, we affirm the judgment of the trial court.
 

 PORTLEY, P.J. and THOMPSON, J., concurring.
 

 [1]
 

 . He also asserts other errors which we address in our memorandum decision pursuant to. Arizona Rule of Civil Appellate Procedure 28(g). That rule provides for partial publication of decisions "[wjhen the court issuing a decision concludes that only a portion of that decision meets the criteria for publication as an opinion.”
 

 [2]
 

 . A.R.S. § 25-101, in place since 1962, reads as follows:
 

 A. Marriage between parents and children, including grandparents and grandchildren of every degree, between brothers and sisters of the one-half as well as the whole blood, and between uncles and nieces, aunts and nephews and between first cousins, is prohibited and void.
 

 Subsection B was added in 1990. It reads:
 

 B. Notwithstanding subsection A, first cousins may marry if both are sixty-five years of age or older or if one or both first cousins are under sixty-five years of age, upon approval of any superior court judge in the state if proof has been presented to the judge that one of the cousins is unable to reproduce.
 

 [3]
 

 . "Lex loci” is a Latin phrase which means "[t]he law of the place; local law.” Black's Law Dictionary 923 (7th ed.1999).
 

 [4]
 

 . Although our cases do not recognize a “most significant relationship” test as applied to the issue of which out-of-state marriages to recognize, this does not mean a "most significant relationship” test is inappropriate in other circumstances.
 
 See, e.g., Baroldy v. Ortho Pharm. Corp.,
 
 157 Ariz. 574, 760 P.2d 574 (App.1988) (considering most significant relationship in a tort case);
 
 Ambrose v. Illinois-Califomia Express, Inc.,
 
 151 Ariz. 527, 729 P.2d 331 (App.1986) (same).
 

 [5]
 

 . For a sampling of authorities arguing in favor of a traditional view of marriage,
 
 see, e.g.,
 
 Linda J. Waite & Maggie Gallagher, THE CASE FOR MARRIAGE: WHY MARRIED PEOPLE ARE HAPPIER, HEALTHIER, AND BETTER OFF FINANCIALLY 11 (2000) ("[Mjarriage can work its miracles only if it is supported by the whole society. [M]arriage cannot thrive, and may not even survive, in a culture that views it as just another lifestyle option.”); David Orgon Coolidge & William C. Duncan,
 
 Reaffirming Marriage: A Presidential Priority,
 
 24 HARV. J.L. & PUB. POL'Y, 623, 638 (2001) (“If Americans believe that children thrive best with both a mother and father, and that marriage is the central social institution that brings men, women and children together, they should have the right to recognize an institution in law and support it in public policy.”); Lynn D. Wardle,
 
 The Potential Impact of Homosexual Parenting on Children,
 
 1997 U. Ill. L.Rev. 833, 911 (arguing that support for same-sex marriage and parenting is premature and providing an appendix of social scientific studies on same-sex parenting); Stanley Kurtz,
 
 The End of Marriage in Scandinavia: The “Conservative Case" for Same-Sex Marriage Collapses,
 
 THE WEEKLY STANDARD, February 2, 2004, at 26, 33 (arguing for strengthened "links between American marriage and parenthood”); David Orgon Coolidge,
 
 Same-Sex Marriage?
 
 Baehr
 
 and
 
 Miike
 
 and the Meaning of Marriage,
 
 38 S. Tex. L.Rev. 1, 30 (1997) ("The traditional view [of marriage] ... has been the basis for defining
 
 *483
 
 marriage in male-female terms in custom and law.”).
 

 For authorities that urge consideration of traditional marriage as one of many acceptable family structures,
 
 see, e.g.,
 
 ALI-PRINCIPLES §§ 6.01-06 (setting forth principles for recognition of "domestic partners”);
 
 id.
 
 at § 6.02 cmt. a (contending that "although society’s interest in the orderly administration of justice and the stability of families are best served when the formalities of marriage are observed, a rapidly increasing percentage of Americans form domestic relationships without such formalities”); Stephanie Coontz, THE WAY WE REALLY ARE 172 (1997) (urging that we "stop arguing about the relative merits of ideal family types”); David L. Chambers,
 
 For the Best of Friends and for Lovers of All Sorts, A Status Other Than Marriage,
 
 76 NOTRE DAME L. REV. 1347, 1348 (2001) (submitting that a "designated friend” legal status should be given to any two people who agree to have mutual responsibilities); William N. Esk-ridge, Jr.,
 
 Comparative Law and the Same-Sex Maniage Debate: A Step-byStep Approach toward State Recognition,
 
 31 MCGEORGE L. REV. 641, 661 (2000) (arguing in favor of same-sex marriage and commenting on the "hysteria and irresponsibility in opponents’ predictions” that it will undermine the institution of marriage); Paula L. Ettelbrick,
 
 Domestic Partnership, Civil Unions, or Marriage: One Size Does Not Fit All,
 
 64 ALB. L. REV. 905, 914 (2001) (arguing that the law should reflect numerous and different forms of family relationships that exist in our society); Naomi Cahn,
 
 Alone Together: Law and the Meaning of Marriage,
 
 98 Mich. L.Rev. 1766, 1768 (2000) (asking "why not allow adults to choose their own means of commitment to each other[?]”).
 

 [6]
 

 . On appeal, appellee also raised three different arguments for the application of Virginia law based on the United States Constitution: the Full Faith and Credit Clause, the Contracts Clause, and the right to interstate travel. The Contracts Clause argument and the right to interstate travel were not raised in the trial court. The Full Faith and Credit Clause was briefly mentioned in the trial court but without any recitation of authorities. Accordingly, on this record, we consider these constitutional issues waived.
 
 K.B. v. State Farm Fire & Cas. Co.,
 
 189 Ariz. 263, 268, 941 P.2d 1288, 1293 (App.1997) (”[W]e generally do not consider arguments, including ones concerning constitutional issues, raised for the first time on appeal.”);
 
 see also Maricopa County v. State,
 
 187 Ariz. 275, 281, 928 P.2d 699, 705 (App.1996) (same).
 

 [7]
 

 . The court may only strike down legislation when it is in violation of the United States or Arizona Constitution.
 
 Supra
 
 ¶ 10. There is no express constitutional provision in either Constitution that prohibits retroactive legislation. Our supreme court, however, has located that right in the substantive due process and separation of powers doctrines under the Arizona and United States Constitutions.
 
 San Carlos,
 
 193 Ariz. at 204-06, ¶¶ 12-16, 972 P.2d at 188-90;
 
 Murray,
 
 194 Ariz. at 374-75, ¶¶ 5-9, 982 P.2d at 1288-89. As stated in
 
 Murray,
 
 the prohibition against disturbing vested substantive rights is "binding under the separation of powers embodied in article III of our constitution____As a general matter, the separation of powers doctrine leaves creation of future statutory law to the legislative branch and determination of existing law and its application to past events to the judicial branch.”
 
 Id.
 
 at 375, ¶ 9, 982 P.2d at 1289.
 

 [8]
 

 . We agree that "[t]he rule that legislation may not retroactively disturb vested rights is simple enough; the difficulty arises in defining a vested
 
 *485
 
 right, and determining when a right actually vests.”
 
 Hall,
 
 149 Ariz. at 140, 717 P.2d at 444.
 

 [9]
 

 . A party cannot avoid these requirements by estoppel. Appellee also claims that appellant is estopped from arguing that the marriage is void because he requested the dissolution of the marriage. Were we to adopt this reasoning the state would forfeit its power to regulate marriage where parties stipulated to marriage. " 'Parties cannot stipulate as to the law applicable to a given state of facts and bind the court.' "
 
 Word v. Motorola, Inc.,
 
 135 Ariz. 517, 520, 662 P.2d 1024, 1027 (1983) (quoting
 
 State Consol. Publ’g Co. v. Hill,
 
 39 Ariz. 163, 167, 4 P.2d 668, 669 (1931));
 
 see also Boddie v. Connecticut,
 
 401 U.S. 371, 376, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) ("Without a prior judicial imprimatur, individuals may freely enter into and rescind commercial contracts, for example, but we are unaware of any jurisdiction where private citizens may covenant for or dissolve marriages without state approval.”).