NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JO A. SAINT-GEORGE and STEVEN SAINT-GEORGE, as husband and wife, *Plaintiffs/Appellants*,

*v.*

MAYO CLINIC ARIZONA; MAYO CLINIC SCOTTSDALE; MAYO REGIONAL PRACTICES ARIZONA, *Defendants/Appellees*.

No. 1 CA-CV 13-0335
FILED 10-16-2014

Appeal from the Superior Court in Maricopa County
No. CV2010-011588
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

Jo A. Saint-George, Baltimore
*Plaintiffs/Appellants*

Snell & Wilmer, L.L.P., Phoenix
By Barry D. Halpern, Martha E. Gibbs, Craig Logsdon
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

---

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Randall M. Howe joined.

---

**P O R T L E Y**, Judge:

¶1        Jo A. Saint-George appeals from a judgment dismissing her claims against Mayo Clinic Arizona, Mayo Clinic Scottsdale, and Mayo Regional Practices Arizona (collectively, "Mayo") as a sanction for discovery abuses.  She claims that the trial court erred by: (1) allowing discovery before ruling on her summary judgment motions; (2) ordering her to participate in an independent medical examination ("IME"); (3) failing to grant her sanctions under Arizona Rule of Civil Procedure ("Rule") 16(f); (4) granting sanctions against her under Arizona Revised Statutes ("A.R.S.") section 12-349(A)(3)[1] without specific findings of fact and conclusions of law; (5) granting three monetary sanctions under Rule 37; and (6) dismissing her case as a discovery sanction.[2]  Finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Saint-George met with Steven Ressler, M.D., at the Mayo Clinic on June 27, 2007.  Dr. Ressler ordered an MRI test, which showed a benign cyst near her pituitary gland.  Ten months later, Saint-George returned for a follow-up appointment, but did not report any symptoms that would suggest the cyst was affecting her endocrine system.  Subsequently, she sought additional treatment with various healthcare providers across the nation.  In September 2009, Saint-George had the benign cyst removed.

---

[1] We cite to the current version of the statute unless otherwise noted.

[2] Saint-George also accuses Mayo's counsel of violating multiple ethical rules.  She did not make the argument before the trial court and we will not consider it for the first time on appeal.  *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13, 13 P.3d 763, 768 (App. 2000) (appellate court does not consider issues raised for first time on appeal).

¶3        Saint-George sued Mayo alleging that Dr. Ressler failed to diagnose her "Secondary Addison's disease," a rare endocrine disorder.[3] Saint-George, an Arizona lawyer[4] who was representing herself, failed to cooperate with discovery. For example, when she appeared late for a status conference, the trial court, after setting aside the dismissal that had been entered moments earlier,[5] admonished her to "actively litigate the case from this point forward or the case may be dismissed upon appropriate motion from Defendants." The court also ordered Saint-George to comply with her discovery obligations, and ordered her to pay sanctions of $7804 to Mayo for her lack of compliance.

¶4        Saint-George, however, continued to not actively prosecute her case or cooperate with discovery, and Mayo filed another motion to dismiss. In response, Saint-George filed five motions for partial summary judgment and a late response to the motion to dismiss. Mayo responded by filing a motion for fees, costs and double damages under A.R.S. § 12-349(A)(3), alleging that Saint-George repeatedly and unreasonably expanded and delayed the proceedings. Saint-George failed to respond, and the trial court granted Mayo's § 12-349(A)(3) motion and sanctioned Saint-George by ordering her to pay Mayo $8567.

¶5        At a subsequent status conference, the court denied Mayo's motion to dismiss, discussed discovery, including Saint-George's deposition and potential IME, and ordered that Mayo notice the deposition and the IME on the same day or on two consecutive days by the end of July 2012. Saint-George then filed multiple motions asking the court to rule on her pending motions for partial summary judgment before any deposition or IME. The court denied her motions.

¶6        Saint-George also filed a motion for protective order arguing that the IME was unnecessary because she was not currently being treated for her injuries. The court denied her motion and Mayo ultimately scheduled the IME on October 11 and her deposition the following day.[6]

---

[3] Saint-George also sued Dr. Ressler, but voluntarily dismissed him from the lawsuit.

[4] Saint-George is also licensed in California.

[5] The court, however, did not set aside the dismissal of the claims filed by her husband, Steven Saint-George.

[6] Saint-George sought to stay the IME, but the trial court denied her request. She filed an unsuccessful special action to this court, 1 CA-SA 12-0227 and our supreme court, CV 12-0417-PR.

¶7         Saint-George did not attend the IME, but appeared and was deposed the following day.  The court sanctioned Saint-George for "not cooperat[ing] in discovery in good faith and [failing to] compl[y] with the court's orders with respect to the IME" and ordered her to pay Mayo $3233.50.  The court also warned Saint-George that if she failed to attend the IME, "she may be subject to additional sanctions which may include precluding her trial testimony or precluding her expert from testifying."

¶8         After Mayo rescheduled the IME for December 12, Saint-George filed three motions that collectively were designed to stop the IME and reverse the court's prior orders.  The court denied the motions, ordered Saint-George to appear for the IME and, again, sanctioned her to pay $6422.50 for Mayo's attorneys' fees and the IME fee.

¶9         Saint-George appeared for the December IME, but refused to submit to a mental examination.  Mayo then moved to dismiss and, after briefing and a hearing, the court dismissed Saint-George's case finding that she willfully and in bad faith violated court orders by: (1) refusing to sign medical releases, (2) refusing to attend the October 11 IME, and (3) refusing to participate in the December 12 IME.

## DISCUSSION

### A.  Motions for Partial Summary Judgment

¶10         Saint-George first contends that the trial court abused its discretion by requiring her to submit to an IME before ruling on her five partial summary judgment motions.  She argues that Mayo never filed a Rule 56(f) affidavit outlining why Mayo needed to conduct additional discovery before responding to the partial summary judgment motions.

¶11         We review the trial court's ruling extending the time for Mayo to respond to the partial summary judgment motions for an abuse of discretion.  *See Findlay v. Lewis,* 172 Ariz. 343, 346–47, 837 P.2d 145, 148–49 (1992) (appellate court will not substitute its judgment for the superior court's management of its docket in determining whether to grant motion for extension of time); *see also cf. Blue v. Hartford Life & Acc. Ins. Co.,* 698 F.3d 587, 593-96 (7th Cir. 2012) (finding that the district court was responsible for trial management and did not abuse its discretion under Fed. R. Civ. P. 6(b) or 56(f) by denying a motion for a second extension of time to respond to a summary judgment motion).

4

**¶12** Rule 56(f) provides one mechanism for getting additional time to respond to a motion for summary judgment. A party opposing a summary judgment motion, who is unable to secure affidavits or other evidence to file a response may seek additional time to conduct discovery and respond by filing an affidavit outlining the necessary discovery and the time that it will take. Ariz. R. Civ. Pro. 56(f); *see Best v. Edwards,* 217 Ariz. 497, 504, ¶ 30, 176 P.3d 695, 702 (App. 2008).

**¶13** Rule 56(c)(2) is another mechanism to seek additional time to respond to a summary judgment motion. It provides that:

> A party opposing the motion must file its response and any supporting materials within 30 days after service of the motion. The moving party shall have 15 days after service of the response in which to serve a reply memorandum and any supporting materials. **These time periods may be shortened or enlarged** by a filed stipulation of the parties or **by court order**; provided, however, that court approval is required for any stipulated extensions to a briefing schedule that would purport to make a reply or other memorandum due less than five days before a hearing date previously set by the court, or would require postponement of a scheduled hearing date or other modifications to an existing case scheduling order.

Ariz. R. Civ. Pro. 56(c)(2) (emphasis added); *see also* Ariz. R. Civ. Pro. 6(b) (allows the trial court discretion to enlarge the time for a party to respond to a motion if made before the expiration of the time period).

**¶14** Here, before the responses to the partial summary judgment motions were due, Mayo filed a successful motion to extend the response deadline to Saint-George's motions given her lack of cooperation with discovery. Mayo subsequently requested additional extensions that were granted by the court. Because the court extended Mayo's response time to the partial summary judgment motions, Mayo did not have to file a separate Rule 56(f) affidavit. Consequently, because the trial court was managing the case given the ongoing discovery issues, the court did not abuse its discretion by extending Mayo's response time to the partial summary judgment motions.

## B. Psychiatric Independent Medical Examination

¶15        Saint-George next argues that the trial court erred by ordering her to participate in a psychiatric IME because Mayo did not have good cause for the examination. A trial court may order a litigant to undergo a mental or physical examination by a qualified professional under Rule 35 when the party's physical or mental condition is in controversy and good cause is shown. *See Avila v. Superior Court*, 169 Ariz. 49, 52, 816 P.2d 946, 949 (App. 1991). Because "[a] trial court has broad discretion over discovery matters, . . . this court will not disturb that discretion absent a showing of abuse." *Blazek v. Superior Court In & For Cnty. of Maricopa*, 177 Ariz. 535, 537, 869 P.2d 509, 511 (App. 1994) (citing *Brown v. Superior Ct.*, 137 Ariz. 327, 331, 670 P.2d 725, 729 (1983)).

¶16        Here, Saint-George alleged Mayo was responsible for her injuries because Mayo failed to diagnose her endocrine disorder. Mayo sought a psychiatric IME because a doctor at the University of Michigan, who had examined Saint-George after her visits at Mayo, recommended she see a psychiatrist after failing to find any medical problems with her endocrine system. Mayo, as a result, wanted Saint-George examined by a licensed, board-certified psychiatrist and Mayo successfully argued that Saint-George's mental health was an issue because she could have factitious disorder[7] that might explain her symptoms. *See Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964) ("A plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination . . . of such asserted injury."). Because Saint-George put her physical and possibly mental health condition at issue by filing a medical malpractice lawsuit, the court did not abuse its discretion in ordering the IME.

¶17        Saint-George also claims that the trial court erred because Mayo failed to file a Rule 35(a) motion and notice of the IME with the court, and the court never ordered her to attend a "psychiatric" IME. We disagree. Although a notice of IME is generally not filed with the court, *see* Ariz. R.

---

[7] Factitious disorder is mental health disorder defined as the psychiatric condition in which a patient deliberately produces or falsifies symptoms and/or signs of illness for the principal purpose of assuming the sick role. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 513 (4th ed. 2000).

Civ. P. 5(g)(2)(B), Mayo filed the notice of the December IME along with the certificate of service after being directed to do so by the court.

¶18　　　　Saint-George's argument that the court never ordered her to attend a "psychiatric" IME is frivolous. The December 12 IME notice stated that: the examination would be by a board-certified psychiatric physician; the psychiatrist would be assisted by a licensed psychologist; and "[t]he examination and interview will include all aspects of physical and mental health issues as they may relate to the liability issues and damages alleged by Plaintiff in her Complaint." Saint-George responded by filing a protective order, a special action, and several other motions trying to prevent the psychiatric IME. The court denied all her motions and ordered her to attend the December 12 IME. Consequently, based on the record, the court clearly ordered her to participate in a complete IME, including a psychiatric component, and did not abuse its discretion in doing so.[8]

## C. Rule 16(f) Sanctions

¶19　　　　Saint-George contends that the trial court erred by failing to award sanctions to her under Rule 16(f) after Mayo violated Rule 37(b)(2)(C) by allegedly serving the IME after the court-ordered deadline. We review the ruling on discovery violations and sanctions for an abuse of discretion. *Solimeno v. Yonan*, 224 Ariz. 74, 77, ¶ 9, 227 P.3d 481, 484 (App. 2010).

¶20　　　　The trial court ordered Mayo to notice Saint-George's deposition and IME by the end of July 2012. Mayo timely served Saint-George with a notice of deposition and notice of IME.[9] She ignored the September notice of deposition. She sought to prevent the IME by filing a motion for protective order, and asked the court to stay any further discovery until after a ruling on her summary judgment motions. Although Mayo rescheduled the IME for October, Saint-George refused to attend. She

---

[8] Saint-George also argues that the court abused its discretion by failing to reconsider and vacate the discovery orders after the case was transferred to a new judge. She, however, has not provided any authority for her proposition that a judge being assigned to an existing case must reconsider and set aside all prior discovery rulings. Such a ruling, however, could constitute an improper horizontal appeal. *See Donlann v. Macgurn*, 203 Ariz. 380, 385-86, ¶ 29, 55 P.3d 74, 79-80 (App. 2002).

[9] Although Saint-George contends on appeal that Mayo did not timely notice her IME, she conceded in her motion for protective order that Mayo had noticed the deposition and the IME on July 17, 2012.

did attend the IME when it was rescheduled in December, but refused to cooperate with the mental examination portion of the IME.

¶21 During discovery, Mayo sought to exclude Saint-George from testifying. In responding to Mayo's motion, she denied violating any order. In addition to addressing Mayo's motion, Saint-George's response included the following heading in the caption, "Request for Sanctions for Defendant Failure to Comply with Court Orders." In later pleadings, she argued for sanctions. The court did not formally act on her request for sanctions, which we treat as a denial of her request. *See Pearson v. Pearson*, 190 Ariz. 231, 237, 946 P.2d 1291, 1297 (App. 1997) (holding that a court's failure to rule on motions for attorneys' fees implies that the motions were denied).

¶22 The trial court was in the best position to determine when to award sanctions as part of its authority to manage discovery and the discovery deadlines. *See Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14, 296 P.3d 100, 104 (App. 2013). Because the court had to evaluate Saint-George's response and request in the context of the ongoing discovery dispute, the court was in the best position to determine whether to sanction Mayo. As a result, the court did not abuse its discretion by denying Saint-George's request for sanctions.

### D. Section 12-349(A)(3) Sanctions

¶23 Saint-George challenges the sanctions imposed on her under § 12-349 and contends that the trial court did not make sufficient findings of fact and conclusions of law to justify them. Section 12-349(A)(3) provides that the court "shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party . . . if the attorney or party . . . [u]nreasonably expands or delays the proceeding." And, § 12-350 requires the court to state its reasons for the award. Saint-George, however, did not file a response to Mayo's motion for statutory sanctions, did not object to the ruling or seek relief under Rules 59 or 60. Her failure to object to the alleged sufficiency of the findings and conclusions "precludes [her] from raising the absence of findings as error on appeal." *Trantor v. Fredrikson*, 179 Ariz. 299, 301, 878 P.2d 657, 659 (1994). As a result, we will not consider her argument challenging the statutory sanctions for the first time on appeal.

### E. Rule 37 Sanctions

¶24 Saint-George next argues the trial court abused its discretion by awarding three separate Rule 37 sanctions against her because Mayo failed to comply with Rule 37(a)(2)(C). We review a ruling on discovery

violations and sanctions for an abuse of discretion. *Solimeno*, 224 Ariz. at 77, ¶ 9, 227 P.3d at 484.

**¶25**        Rule 37(a)(2)(C) requires a party in a discovery dispute to first make good-faith efforts to resolve the dispute before seeking a motion to compel. If Saint-George thought Mayo had not made good-faith efforts to resolve any discovery dispute, she should have raised the issue first with the trial court. But once Saint-George failed to comply with her discovery obligations, Mayo was free to seek Rule 37 sanctions. Moreover, every time the court sanctioned Saint-George, the court had first ordered her to provide or cooperate with the required discovery, gave her time to comply with the order, and described the basis for the ruling. Consequently, the court did not abuse its discretion by awarding sanctions for three different discovery violations.

### F.  Dismissal

**¶26**        Saint-George finally argues that the trial court erred by dismissing her complaint for discovery violations. We will affirm the ruling unless the record reflects a clear abuse of discretion. *Rivers v. Solley*, 217 Ariz. 528, 530, ¶ 11, 177 P.3d 270, 272 (App. 2008) (citing *Wayne Cook Enter., Inc. v. Fain Prop. Ltd. P'ship*, 196 Ariz. 146, 147, ¶ 5, 993 P.2d 1110, 1111 (App. 1999)). The court's discretion in dismissing a case for discovery violations "is more limited than when it employs lesser sanctions," *id.* (citations omitted); *see Gulf Homes, Inc. v. Beron*, 141 Ariz. 624, 628, 688 P.2d 632, 636 (1984), but we defer to the court's explicit or implicit factual findings and will affirm them so long as they are supported by reasonable evidence. *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254, ¶ 10, 63 P.3d 282, 285 (2003).

**¶27**        Mayo asked the court multiple times to dismiss the case for discovery violations. The court repeatedly denied Mayo's motions to dismiss the case. It was only after Saint-George's failure to participate in the December IME, briefing on Mayo's subsequent motion to dismiss, and an evidentiary hearing, that the ultimate civil sanction was imposed. In its comprehensive ruling, the court recounted the long history of the case and determined that dismissal, an extreme sanction, was warranted since lesser sanctions did not "succeed[] in compelling [Saint-George] to comply with court orders, and are unlikely to do so in the future." Moreover, the court found that Saint-George's violations were not "one-time or accidental, but rather [were] repeated and pervasive" and "[t]he only conclusion one can draw is that [Saint-George] is unable or unwilling to comply with the Rules of Civil Procedure and the court's orders." As a result, and after

considering her refusal to participate in the December IME, the court found that Saint-George's "actions have . . . [made] it impossible for [Mayo] to get a fair trial" and the "only appropriate sanction is dismissal."

**¶28** We have reviewed the record to determine if there is reasonable evidence to support the court's ruling. Saint-George brought the medical malpractice lawsuit but would not participate in discovery, and refused to do so for three years. As a result, we do not find that the court abused its discretion by concluding that the only appropriate sanction was to dismiss the lawsuit with prejudice.

**¶29** Saint-George has requested that we sanction Mayo under § 12-349(A) and issue a disgorgement sanction against Mayo's counsel for $26,026. Because Saint-George was not the prevailing party on appeal, we deny her requests.

## CONCLUSION

**¶30** Based on the foregoing, we affirm the judgment of dismissal with prejudice.



Ruth A. Willingham · **Clerk of the Court**
F I L E D : gsh